HARKINS ET AL. *v.* TIMMER ET AL.

(No. 74-148—Decided May 2, 1974.)

Common Pleas Court of Richland County.

*Mr. David R. Arbaugh* and *Mr. Donald Lett*, for plaintiffs.
*Mr. Harry M. Welsh*, for defendants.

MAYER, J. This cause came on to be heard on final hearing, a temporary order having heretofore been issued and the case having been continued for final hearing on the merits on April 30, 1974.

Plaintiffs contend, in their complaint, that on or before September 15, 1973, plaintiffs and all other members of the class were appointed by defendant, Board of Elections of Richland County, Ohio, or by its predecessors in office, as precinct judges or clerks for a period of one year and that said one year period has not elapsed.

Plaintiffs brought this action on behalf of themselves and other members of a class consisting of approximately 74 persons, each 70 years of age or older. A number of persons within said class have filed requests for exclusion from such class action, and such are filed and included in the official file of this case.

That on or about March 28, 1974, during the year of the plaintiffs' appointments as precinct judges or clerks, said board of elections summarily removed from office plaintiffs and other members of the class, not for neglect of duty, or for malfeasance, or misconduct in office, or for any other good and sufficient reason.

This court directed notices be given, and the same were given, as required by Civil Rule 23 (C).

Examination of the journal of the Richland County Board of Elections reveals that a special meeting was held March 13, 1974, with all members being present. Among other things, a motion was made by Mr. Timmer, seconded by Mr. Kindt, providing in part: "That the maximum age of 70 years be hereby made mandatory for Poll Workers employed by the Richland County Board of Elections beginning with the Primary Election of May 7, 1974; that the salary of said Poll Workers be increased from the standard of $25.00 to the sum of $40.00, and the Salary of Tellers (Counters and Tallyers) be hereby increased from $25.00 to $40.00, all subject to approval of the Secretary of State. (No objections filed to date.)"

The vote was as follows: Yeas: 4, Nays: 0, Absent: 0. The motion was declared PASSED.

On April 6, 1974, the board met in special meeting, rescinded their action on the part pertaining to wage increases.

On said board's letterhead, under date of March 22, 1974, a letter, signed by the board chairman, was addressed to: "Dear Election Workers," and appearing to the right of this was: "Re: Maximum Age Limits, Mandatory Retirement, (O. R. C. 145.32)."

The contents of the letter read:

"The Board of Elections, effective March 1, 1974, has established a standard that shall affect the services of many of our Poll Workers. We regret to lose them. They have served the public well and we are proud of the record YOU have helped us establish, but we must draw the line at the standard age set by State Law.

"Political Service of Members of the Central Committees is not affected. They shall still serve as duly elected or appointed representatives of their Political Party. Those over 70 years of age cannot appoint themselves to work at the Polls on Election Day. In effect no Central Committeeman may appoint a Poll Worker over 70 years of age.

"We point out, we still wish to retain your cooperation. Please contact us at the Board office if you have any questions."

We need concern ourselves only briefly with R. C. 145.32. This is under R. C. Chapter 145, the title of which is: Public Employees Retirement System. The section commences with the words: "A *member* * * *." Clearly this refers solely to a member of PERS because it concerns itself with only pension matters. Paragraph two of this section begins: "An employer *may*, as of the thirtieth day of June of any year, terminate the employment of any *member* who has attained the age of seventy years. * * *" (Emphasis added.)

It is obvious that this statute was misapplied, as it applies only to workers under the Public Employees Retirement System. Richland County poll workers are not such. Further, even though this statute is not applicable, in any event it is not such law that makes retirement of all employees past 70 mandatory. Paragraph two of R. C. 145.32 reads, "may," and in said section it provides as to how persons under PERS can continue working many years past 70, if their physical and mental health does not make them incompetent to perform the duties of their respective positions. Under R. C. 145.01 (B), "member" means any person included in the membership of the Public Employees Retirement System.

Let us now look to that important and relevant Title 35, Elections, under the Ohio Revised Code.

R. C. 3501.22 sets forth the procedure for a board of elections to follow for making appointments of the four judges and two clerks in each precinct. These words appear in the statute: "* * * after careful examination and investigation as to their qualifications, appoint for each election precinct * * *." Below this there is this sentence: "The term of such precinct officers shall be for one year." This is important. But the last sentence of this section is equally important and reads: "Any judge or clerk may be summarily removed from office at any time by the board for neglect of duty, malfeasance, or misconduct in office, or for any other good and sufficient reason."

The logic and soundness of R. C. 3501.22 is indicated by the fact that at least ten legislatures of other states

have adopted comparative laws, including the state contiguous to Ohio of Indiana, Michigan, Pennsylvania, West Virginia and Kentucky. And, in 1 Opinions of Attorney General (1931), 222, No. 2943, the then Attorney General of Ohio expressed his view as to the mandatory nature of this statute (then, G. C. 4785-25) when he held that even a city charter provision at variance with the general law of Ohio is invalid, and must yield to the Ohio election procedure statutes.

The highest court in Ohio has strongly emphasized the requirement of adhering to the election laws of the state. R. C. 3501.16, which relates to the Secretary of State, and in the opinion of this court not literally to county board members, provides that the Secretary of State may summarily remove members of a board of elections. However, an example of how zealous the judiciary has been to protect the rights of employees and officers is displayed by the Supreme Court in *State, ex rel. Hughes*, v. *Brown* (1972), 31 Ohio St. 2d 41, where prohibition actions arose as the result of the removal of relators as members of the Cuyahoga County Board of Elections by the Secretary of State. The Supreme Court held that a formal complaint and hearing are required prior to any removal of a member of a board of elections (Cuyahoga County Board of Elections), and a permanent writ was issued prohibiting the Secretary of State Brown from removing relators without complying with such requirements. In a *per curiam* opinion the court said: " 'In 1912 the people of Ohio adopted, as part of the Constitution, Section 38, Article II, in which, among other things, it is written: "Laws shall be passed providing for the prompt removal from office, *upon complaint and hearing*, of all officers." * * *' "

It is true that a board of elections is an agency established by law to administer the election laws, the subject matter of which is political and not judicial, and that usual matters before a board are not per se the subject of judicial cognizance. Such are ordinarily matters for political regulation within the legislative power. However, exceptions are made in cases of fraud, mistake, abuse of discre-

tion, misinterpretation of a statute, or the clear disregard of legal provisions on the part of boards of elections. *Sullivan* v. *State, ex rel. O'Connor* (1932), 125 Ohio St. 387; *State, ex rel. Schwartz,* v. *Leonard* (1940), 65 Ohio App. 251; 19 Ohio Jurisprudence 2d 31, Elections, Section 24.

A rather interesting decision was handed down November 4, 1968 by the Court of Appeals for Portage County in *State, ex rel. May,* v. *Jones,* 16 Ohio App. 2d 140. The two relators therein, one a student of Kent State University, Kent, Ohio, established a permanent residence in Kent, having previously spent the major portion of their lives in Tuscarawas County, Ohio. They were denied the right to vote in Portage County. The Court of Appeals, in reversing this ruling, held that a factual decision of a board of elections is subject to judicial review when such factual decision is arbitrary, unreasonable or constitutes an abuse of discretion.

In our instant Richland County case, facts against each individual past 70 were not even acquired. The evidence discloses that there were some general complaints of workers not being on time and the like, but no specific facts were gathered, or disclosed to this court, of complaints or investigations or hearings of individuals within the over 70 group. Age appears to be the deciding factor generally, rather than the specific reason, for the removal of each individual.

Is age itself a disqualification? R. C. 3501.27, states the following about qualifications:

"All judges and clerks of election shall be qualified electors. No person who has been convicted of a felony, or any violation of the election laws, or who is unable to read and write the English language readily, or who is a candidate for an office to be voted for by the voters of the precinct in which he is to serve shall serve as an election officer. A person when appointed as an election officer shall receive from the board of elections a certificate of appointment which may be revoked at any time by the board for good and sufficient reasons. Such certificate shall be in such form as the board prescribes and shall specify the

precinct, ward, or district in and for which the person to whom it is issued is appointed to serve, the date of appointment, and the expiration of his term of service.''

In the instant case, clearly then there has been a gross misapplication of R. C. 145.32. As previously stated, this statute applies only to members of the Public Employees Retirement System. And clearly the board had this section in mind when issuing the letter on March 22, 1974, *supra*, addressed to these particular, ''Dear Election Workers,'' wherein said section is referred to, and wherein it also states, ''* * * but we must draw the line at the standard age set by State Law.''

Next, there has been a clear disregard of the legal provisions of R. C. 3501.22 on the part of the members of the Richland County Board of Elections. These workers were summarily removed with no specific charge of neglect of duty, malfeasance, or misconduct in office, and with no determination made with respect to any of the individuals in question. We refer to the said letter again, wherein the board states: ''* * * We regret to lose them. They have served the public well and we are proud of the record you have helped us establish, * * *'' This is a far different reason than neglect, malfeasance or misconduct.

We now consider the remaining ground in R. C. 3501.-22 for removal from office, that of ''other good and sufficient reason.''

From the evidence and the record of the board in this case the inescapable conclusion must be reached that age was the sole determining factor or criterion for the firing of those persons herein involved who have been blessed by the Almighty God seeing fit to let them advance in years to what we might term, ''The Sunset of Life.''

Reaching a given advanced age is not per se a disqualification or badge of incompetency to work as a poll worker. By the same token a person 22 or 23 years old can not be declared incompetent for work because he is youthful. A board of elections is, in a sense, a public instrumentality entrusted with responsibility as designated by law, and legally and morally bound to select, retain and replace such

workers, including poll workers, as will be capable physically and mentally of performing their duties well.

Nor does it make sense to retire the experience and wisdom of all aging people. Senator Strom Thurmond, at 71, is still a leader of the U. S. Senate; Helen Hayes, at 73; Bob Hope, at 70, and Jack Benny, at 80, still stimulate us on stage. Justice William O. Douglas, at 75, sits on the U. S. Supreme Court; Pablo Picasso died at 91 and Pablo Casals at 97, after functioning with brilliance until the end. Recently, Jesse Beer was featured on the front page of the News Journal for "Going Strong At Age 92."

If there are to be any valid regulations pertaining to mere age qualifications, minimum or maximum, such regulations would, under the law, need be established by an enactment of the Ohio Legislature.

Therefore, a limitation of age 70, without other attending circumstances and procedures under the law of Ohio, is not "other good and sufficient reason" for removal from office, under R. C. 3501.22.

In summary, therefore, it must be, and hereby is, the finding and conclusion of this court that:

1. There has been a gross misapplication of R. C. 145.32 by the members of the Richland County Board of Elections, defendants herein.

2. There has been a clear disregard of legal provisions of the law of the state of Ohio. (R. C. 3501.22.)

3. No charges of neglect of duty or finding of such were made.

4. No charges of malfeasance or finding of such were made.

5. No charges of misconduct or finding of such were made.

6. There was no other good or sufficient reason.

7. Under the Ohio law, the evidence herein, and facts as found in this instant case, the action of the board was unreasonable and constituted an abuse of discretion. Such action was arbitrary.

It is ordered, adjudged and decreed that defendant board of elections be, and hereby is, enjoined permanently

152

from removing said plaintiffs or other members of the class from office, all as prayed for in the complaint. Costs assessed against defendants.

*Permanent injunction granted.*